**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **IN THE MATTER OF THE APPLICATION OF WP COMPANY LLC** | **Misc. Action No. 19-0032 (ABJ)** |

## GOVERNMENT'S RESPONSE TO MOTION FOR PUBLIC ACCESS
## TO CERTAIN SEALED COURT RECORDS

The United States of America respectfully opposes the Washington Post's (movant) motion to unseal certain unredacted records from *United States v. Manafort*, No. 17-cr-201-ABJ-1 (D.D.C.), and to establish a process for ongoing reevaluation of any remaining redactions. The Court recently approved narrow redactions to these documents, and no material change of circumstance warrants further public release. Although the government respectfully disagrees with aspects of the movant's argument about the rights of access that apply here, it is unnecessary for the Court to address those questions. The limited redactions in place are tailored to protect specific compelling interests—including ongoing investigations and the privacy rights of uncharged third parties. The movant does not dispute that redaction of such information is appropriate. The movant additionally asks the Court to establish a "process" for ongoing reevaluation of redactions—including a reporting obligation for the government and regular reassessment of each redaction. But the movant cites no authority for imposing this sort of ongoing process, which would remain in place indefinitely and would impose reporting requirements on not just this Office but also other government components that are handling ongoing matters. The government does not oppose holding this motion in abeyance for a fixed time period and notifying the Court at that time if there have been any material changes of circumstance.

**STATEMENT**

**A.  Factual Background**

On May 17, 2017, then-Acting Attorney General Rod J. Rosenstein appointed Robert S. Mueller, III, as Special Counsel "to investigate Russian interference with the 2016 presidential election and related matters."   Order No. 3915-2017, *Appointment of Special Counsel to Investigate Russian Interference with the 2016 Presidential Election and Related Matters* (May 17, 2017). (capitalization omitted).  The Order directed authorized the Special Counsel "to conduct the investigation confirmed by then-FBI Director James B. Comey in testimony before the House Permanent Select Committee on Intelligence on March 20, 2017, including: (i) any links and/or coordination between the Russian government and individuals associated with the campaign of President Donald Trump; (ii) any matters that arose or may arise directly from the investigation; and (iii) any other matters within the scope of 28 C.F.R. § 600.4(a)." *Id.* ¶ (b).[1]  The Order further authorized the Special Counsel "to prosecute federal crimes arising from the investigation of these matters." *Id.* ¶ (c).

The Special Counsel's investigation has involved multiple lines of inquiry.  Many have been handled in the Special Counsel's Office.  But the Special Counsel has also referred a number of matters to other offices in the government for investigation.  As part of the Special Counsel's investigation, on October 27, 2017, a grand jury in this District returned a 12-count indictment in this Court alleging that Paul J. Manafort, Jr., and a co-defendant committed crimes in connection with work that they performed for Russia-backed political entities in Ukraine, and on February 23, 2018, a substantially similar five-count superseding indictment, which no longer charged the co-

---

[1] 28 C.F.R. § 600.4(a) confers "the authority to investigate and prosecute federal crimes committed in the course of, and with intent to interfere with, the Special Counsel's investigation, such as perjury, obstruction of justice, destruction of evidence, and intimidation of witnesses."

defendant or included certain charges, was unsealed.  *Manafort, supra*, Doc. 202.[2]  On September 14, 2018, Manafort pleaded guilty to a superseding criminal information in this Court (Doc. 419), and agreed to "cooperate fully, truthfully, completely, and forthrightly with the Government and other law enforcement authorities . . . in any and all matters as to which the Government deems the cooperation relevant."  Doc. 422, at 6-7.   Manafort agreed, among other things, to provide detailed information about "his participation in and knowledge of all criminal activities."  *Id.* at 6.

**B.  Relevant Procedural History And Filings At Issue**

The movant seeks unredacted versions of a number of filings and transcripts from *United States v. Manafort*, No. 17-cr-201-ABJ-1 (D.D.C.).   That case has been transferred from the Special Counsel's Office to the U.S. Attorney's Office, and the attorneys who were principally responsible for that case are no longer handling the matter.  Because of the many motions to seal, as well as the sealed and unsealed (but redacted) versions of documents on the docket, it is difficult to discern, in some instances, what docket numbers match what filing.  To assist the Court and the movant, and in the interest of transparency, a discussion of the relevant procedural history and docket entries follows.

*1.  Notification of Breach of Plea Agreement*

On December 7, 2018, the government notified the Court of its determination that Manafort had breached his plea agreement by making numerous false statements while purportedly cooperating with the government.  Doc. 459 (motion to file under seal); Doc. 460 (redacted notice); Doc. 461 (unredacted notice).  The government described five areas in which it believed that

---

[2] On February 22, 2018, a grand jury in the Eastern District of Virginia returned an indictment alleging that Manafort committed various crimes in connection with avoiding taxes on the proceeds of his work and defrauding several banks.  *United States v. Manafort*, No. 18-cr-83-TSE, Doc. 9 (E.D. Va.).  On August 21, 2018, a federal jury convicted Manafort on eight counts, and the court declared a mistrial on ten counts.  Doc. 257.

Manafort had lied to investigators; the government's filing provided supporting detail for each. *See* Docs. 460, 461.  The government moved to file an unredacted version under seal and a narrowly-redacted version publicly, to protect "ongoing law enforcement investigations or uncharged individuals," and because "public disclosure of certain information in the submission could unduly risk harming those efforts," Doc. 459, at 1; *compare* Doc. 460 *with* Doc. 461, and the Court granted the motion.  12/7/18 Minute Order.  On January 7, 2019, Manafort filed a response.  Doc. 469 (motion to file under seal); Doc. 470 (unredacted response); Doc. 472 (redacted response).  Manafort moved to file under seal and to file publicly a version conforming to the government's prior redactions, Doc. 469; *compare* Doc. 470 *with* Doc. 472, and the Court granted Manafort's motion.  1/8/19 Minute Order.

On January 8, 2019, the Court ordered the government to submit a detailed factual and evidentiary basis for its conclusion that Manafort had provided false information to the government.  1/8/19 Minute Order.  On January 15, 2019, the government filed supporting declarations and exhibits. Doc. 474 (motion to file under seal); Doc. 476 (redacted materials); Doc. 477 (unredacted materials).  The government again moved to file unredacted documents under seal and narrowly-redacted documents publicly, to protect "ongoing law enforcement investigations or uncharged individuals," and because "public disclosure of certain information in the submission could unduly risk harming those efforts," Doc. 474, at 1; *compare* Doc. 476, *with* Doc. 477, and the Court granted the motion, 1/15/19 Minute Order.  On January 23, Manafort filed a reply and moved to file an unredacted version under seal and a redacted version prepared in consultation with the government, Doc. 480 (motion to file under seal); Doc. 481 (unredacted reply); Doc. 482 (redacted reply), and the Court granted the motion.  1/23/19 Minute Order.

On February 4, 2019, the Court held a partially-sealed hearing and ordered the parties to propose redactions to the transcript. 2/4/19 Minute Order. The government and Manafort prepared redacted transcripts for public release, Docs. 496, 497, 499, and the Court issued a public, redacted transcript. 2/7/19 Minute Order; Doc. 498; *see also* Doc. 510 (Court's order on certain redactions). On February 8, 2019, Manafort filed a post-hearing memorandum and a motion to file under seal. Doc. 501. The Court granted the motion and directed the parties to prepare a redacted version. 2/8/19 Minute Order; *see* Doc. 502 (unredacted version); Doc. 505 (redacted version). On February 12, 2019, the government moved to file a short supplement under seal in response to Manafort's post-hearing memorandum, Doc. 504 (motion to file under seal); Doc. 507 (sealed response), and the Court granted the motion. 2/12/19 Minute Order.[3] On February 13, 2019, the Court held a further hearing, and the parties prepared redacted versions of the transcript for public release. *See* 2/14/19 Order; 2/15/19 Minute Order; Docs. 514 & 535; *see also* 2/26/19 Minute Order.

On February 26, 2019, the government made an additional, supplemental filing, Doc. 533 (motion to file under seal); Doc. 536 (redacted filing). The Court granted the motion to file under seal. 2/27/19 Minute Order. On March 1, 2019, Manafort filed a reply and motion to reconsider. Doc. 538 (motion to file under seal). On March 1, 2019, the Court issued a Minute Order noting a "clarification of the record" and stating that the clarification did "not alter the Court's determination." 3/1/19 Minute Order. The public order contained certain redactions. *Id.*

---

[3] The government did not submit a redacted version and instead explained that the short supplement was law enforcement sensitive.

*2. Sentencing Submissions*

Pursuant to this Court's November 30, 2018, and February 4, 2019 orders, the government filed its sentencing memorandum on February 22, 2019. Docs. 524, 526, 528. The government moved to file a sealed version and a public version with limited redactions to protect ongoing investigations and uncharged individuals, Doc. 524; *compare* Doc. 526, *with* Doc. 528, and the Court granted the motion. 2/23/19 Minute Order.

**C. Subsequent Developments**

On March 22, 2019, the Special Counsel notified the Attorney General that he had completed his investigation into Russian interference in the 2016 presidential election. The Special Counsel, however, referred a number of matters to other offices in the Department of Justice. Those matters remain ongoing.

**ARGUMENT**

Invoking both the First Amendment and the common law, movant seeks unsealing of redacted records from *United States v. Manafort*, No. 17-cr-201-ABJ-1 (D.D.C.). Movant additionally asks the Court to establish a process for ongoing review of these redactions by the government and the Court. The motion should be denied. Even assuming that a right of access applies to the records at issue, the records have already been made public with limited redactions to protect ongoing investigations and the privacy rights of uncharged parties. No material changes require releasing the redacted material. And the movant cites no authority for imposing an ongoing, and presumably everlasting, duty on the government and the Court to reevaluate those redactions. The government does not object, however, to holding this motion in abeyance for a fixed period of time, so that the government can notify the Court on a fixed, future date whether any material change in circumstances has occurred.

## I.  The Movant Is Not Entitled To The Unsealing Of Additional Materials

In seeking unredacted materials, the movant invokes (Mem. 5-16) a presumptive right of access to certain judicial proceedings based on both the First Amendment and the common law. The government respectfully disagrees with aspects of the movant's analysis.  But it is unnecessary for the Court to address those issues.  The movant appears to agree that redactions may remain in place to protect ongoing investigations and the privacy of uncharged individuals.  Because the current redactions are already tailored to protect those interests, no further unsealing could be required.

### A.  The Current Redactions Are Tailored To Protect Compelling Interests

Even assuming that any qualified right of access applied to the records at issue, no further unsealing is warranted.  The parties and the Court did not simply seal these records in their entirety. Instead, the parties proposed, and the Court approved, tailored redactions to protect ongoing investigations and uncharged third parties.   These redactions were undertaken with great care, in an effort to make public as much of these records as possible.  *See, e.g.,* Doc. 510 (Court's order unredacting certain portions of the transcript).   The movant has not disputed that the interests invoked in the various sealing motions are compelling.  *See Washington Post v. Robinson*, 935 F.2d 282, 291 (D.C. Cir. 1991) (ongoing investigations); *Matter of the Application of WP Co. LLC (Matter of Washington Post)*, 201 F. Supp. 3d 109, 123-127 (D.D.C. 2016) (privacy of uncharged parties); *see also Virginia Dep't of State Police v. Washington Post,* 386 F.3d 567, 579 (4th Cir. 2004) (ongoing investigations); *In re Search Warrant for Secretarial Area Outside Office of Thomas Gunn*, 855 F.2d 569, 574 (8th Cir. 1988) (same); *cf. United States v. Briggs*, 514 F.2d 794, 802 (5th Cir. 1975) (criticizing the practice of naming unindicted coconspirators because doing "accuse[s] persons of crime while affording them no forum in which to vindicate themselves.");

Justice Manual § 1-7.400(B) (stating Department of Justice policy against commenting on an ongoing investigation "before charges are publicly filed").

The redactions at issue were undertaken and approved recently—from December 2018, through March 2019.  No material changes have occurred in these past months.  Although the Special Counsel has concluded his work, he has also referred a number of matters to other offices.  The ongoing investigations that required redactions—many of which were already being conducted by other offices—remain ongoing.  And the privacy interests that warranted redactions remain the same.

### B.  The First Amendment Does Not Guarantee A Qualified Right Of Public Access To Filings About Whether A Defendant Breached A Plea Agreement

Although it is unnecessary to address the issue, the government respectfully disagrees with the movant's contention that the qualified First Amendment right of access applies to many of the records at issue.  An asserted right of access can be based on the First Amendment or the common law.  The First Amendment right of access is narrower but is not subject to the same flexible, multi-factor balancing that courts apply under the common law doctrine.  *See United States v. El-Sayegh*, 131 F.3d 158, 160 (D.C. Cir. 1997); *compare United States v. Brice*, 649 F.3d 793, 795 (D.C. Cir. 2011), *with Metlife, Inc. v. Financial Stability Oversight Council*, 865 F.3d 661, 665 (D.C. Cir. 2017).  The First Amendment protects a qualified "right of access to criminal proceedings," *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 8 (1986) (*Press-Enterprise II*), but that right does not apply to all phases of the criminal process.  The public possesses a qualified First Amendment right of access to judicial proceedings and records only if "(i) there is an 'unbroken, uncontradicted history' of openness, and (ii) public access plays a significant positive role in the functioning of the proceeding."  *Brice*, 649 F.3d at 795 (quoting *Richmond Newspapers,*

*Inc. v. Virginia*, 448 U.S. 555, 573 (1980) (plurality opinion)).  This narrower First Amendment

right does not apply to materials relating to whether a defendant has breached a plea agreement.

    1.  The First Amendment guarantees "the freedom of speech, or of the press."  U.S. Const.,

Amend. I.  As a means of furthering First Amendment interests, the Supreme Court has recognized

an "implicit," qualified First Amendment "right of access" for the public to attend criminal trials.

*Press-Enterprise II,* 478 U.S. at 7 (first quotation from *Waller v. Georgia*, 467 U.S. 39, 46 (1984));

*see Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 603-606 (1982).  Two features of

criminal trials led to recognition of that right.  First, during an "unbroken, uncontradicted history"

dating back centuries, criminal trials have "been open to all who care to observe" and public access

"inher[ed] in the very nature of a criminal trial."  *Richmond Newspapers*, 448 U.S. at 564, 573

(plurality opinion); *accord Globe Newspaper*, 457 U.S. at 605 (criminal trials have "long been

presumptively open," and that "uniform rule" is virtually without exception); *see* U.S. Const.

Amend. VI ("the accused shall enjoy the right to a speedy and public trial").  Second, public access

"to criminal trials plays a particularly significant role in the functioning of the judicial process"

because scrutiny by the public "safeguards the integrity of the factfinding process," "fosters an

appearance of fairness," and "permits the public to participate."  *Globe Newspaper*, 457 U.S. at

606; *accord Press-Enterprise II*, 478 U.S. at 8-9.

    Applying those two considerations, the Supreme Court has found a First Amendment right

of access to the jury-selection stage of criminal proceedings, *Press-Enterprise Co. v. Superior

Court of California*, 464 U.S. 501, 505-513 (1984) (*Press-Enterprise I*), and to the transcript of a

"preliminary hearing" in a criminal case that "function[ed] much like a full-scale trial," *Press-

Enterprise II*, 478 U.S. at 7.  The D.C. Circuit has also found a qualified First Amendment right

of access to completed plea agreements.  *Brice*, 649 F.3d at 799.  But the Supreme Court has also

recognized that "[a]lthough many governmental processes operate best under public scrutiny, it takes little imagination to recognize that there are some kinds of governmental operations that would be totally frustrated if conducted openly." *Press-Enterprise II*, 478 U.S. at 8-9. As a "classic example" of a proceeding that demands secrecy, the Court pointed to the grand jury system. *Id.* at 9 (citing *Douglas Oil Co. v. Petrol Stops Nw.*, 441 U.S. 211, 218 (1979)); *see Douglas Oil*, 441 U.S. at 218-219 (explaining that revelation of grand jury proceedings would pose investigatory threats and unjustly harm persons who are accused but not charged).

Accordingly, a claimed First Amendment right of access must meet a two-part "experience and logic" test. *Matter of Washington* Post, 201 F. Supp. 3d at 117; *see Press-Enterprise II*, 478 U.S. at 8-9. To meet the test of experience, the "historical tradition" of public access must be of "some duration," *In re Reporters Comm. for Freedom of the Press*, 773 F.2d 1325, 1332 (D.C. Cir. 1985), reflecting an "unbroken, uncontradicted history of openness," *Brice*, 649 F.3d at 795 (internal quotation marks omitted). To meet the test of logic, public access must play "a significant positive role in the functioning of the particular process in question." *Press-Enterprise II*, 478 U.S. at 8. Both tests must be satisfied "before a constitutional requirement of access can be imposed." *Reporters Comm.*, 773 F.2d at 1332.

2. Applying the "experience and logic" test, the movant has no First Amendment right of access to materials about whether a defendant has breached his plea agreement. Initially, no historical tradition of public access attaches to submissions for determining whether a defendant has breached a plea agreement. Although courts must occasionally adjudicate the question whether a defendant has breached a plea agreement, this kind of adjudication is uncommon and has no strong historic pedigree.

In any event, it would make little logical sense to impose such a constitutional rule.  By its very nature, submissions about whether a cooperating defendant has lied or misled the government or has otherwise withheld material information requires a careful look at the information that the defendant provided to the government—including granular details of those interactions, sensitive facts shared by the defendant, and any grand jury testimony that the defendant provided.  This also requires a detailed look at any extrinsic information that calls the defendant's cooperation into question—including other evidence that the government has gathered through various means.  It "takes little imagination" to see why these kinds of records demand secrecy.  *Cf. Press-Enterprise II*, 478 U.S. at 8-9 (describing grand jury investigations as a "classic example").  To extend a First Amendment right of access to such proceedings could also put the government in untenable situations.  Where the government believes that a defendant breached a plea agreement, the government should not be required to give that defendant the benefit of the unfulfilled bargain.  And in some instances the government may also have an ethical duty to notify the Court.  But if notifying a court of a breach were to expose vast troves of information to First Amendment analysis, the government could find itself forced to choose between protecting important government and public equities, and zealously enforcing the terms of its plea agreements.  Defendants could use this choice to leverage the government or to otherwise gain an unfair advantage or the benefit of an unfulfilled bargain.[4]

As noted, however, it is unnecessary to decide these questions.  The government has made significant efforts to make public as much of the filings and transcripts about the breach as

---

[4] It is unclear whether a First Amendment right of access applies to the sentencing submissions at issue here.  *See United States v. Corbitt*, 879 F.2d 224, 229-230 (7th Cir. 1989) (no First Amendment right to presentence reports); *United States v. Thompson*, 199 F. Supp. 3d 3, 8-9 (D.D.C. 2016) (First Amendment right to sentencing memoranda).  Because it is unnecessary to resolve that issue, the government takes no position at this time.

possible. The movant has not disputed the compelling nature of the interests asserted in redacting portions of the submissions on this issue.  And the government continues to believe that the redactions are necessary to protect those interests.  The Court need not go further to rule on this motion.

## II.  The Court Should Not Impose An Ongoing Duty To Report And Review Redaction

The movant additionally urges (Mem. 16-18) that the Court should establish a "process" for ongoing review of the redactions.  Specifically, the movant argues that the government "should be required to promptly notify the Court with a public filing a motion to unseal when a major event in the investigation obviates a claimed basis for sealing and redaction."  Mem. 18.  The movant asks that the parties should also be "required to assess" the need for redactions "on a reasonably regular basis—for example every four weeks."  *Id.*

The movant cites no authority for imposing this sort of ongoing process, which would impose a significant and indefinite burden on the government.  It is one thing to ask a party when filing documents or participating in a hearing to suggest appropriate redactions.  But it is another to impose an ongoing duty to report any event that could bear on any of those past redactions and to regularly reevaluate each and every redaction.  Indeed, while the movant is presently seeking such an order in just one case, the movant's asserted interests might justify similar orders in all other cases with public redactions, which could be detrimental to the government.

Such a duty would be especially burdensome here.  The *Manafort* case has been transferred from the Special Counsel's Office to the U.S. Attorney's Office, and the attorneys who were principally responsible for that case are no longer representing the government in this matter.  The redactions are intended to protect ongoing investigations that are being handled by various attorneys in various offices.  It is unknown how long some of these investigations may remain

ongoing.  And some of the privacy interests that are being protected may persist indefinitely.   For the government to "promptly notify" (Mem. 18) the Court of any relevant development would impose a duty not just on the attorneys who have taken over responsibility for the *Manafort* case, but also on other attorneys throughout this and other offices and their successors.   Given the breadth of the related investigations, it would be extremely burdensome, if not impossible, for the government to ensure such prompt reporting and to undertake regular reassessment in this case.

The movant's analogies only underscore the government's arguments.  The movant notes (Mem. 17) that when an indictment is returned under seal, the order often directs the government to notify the Court when the defendant is in custody so that the Court can post the relevant materials.  But that scenario involves a single, narrow event—the planned arrest of the indicted defendant.  It does not involve an indefinite and government-wide duty to report a wide range of events and to reassess a large number of redactions.  The movant also analogizes (Mem. 17-18) to 28 C.F.R. § 50.9, which generally directs Department of Justice attorneys to oppose holding certain kinds of closed proceedings, unless doing so is in the interests of justice.  *See* 28 C.F.R. § 50.9. The movant notes that where a proceeding is closed and its records are "still sealed 60 days after termination of the proceeding," government attorneys should determine if the reasons for closure are still applicable and, if so, review that question every 60 days.   *See* 28 C.F.R. § 50.9(f).  But that directive concerns proceedings or portions of proceedings that remain entirely closed.  Here, the Court has released transcripts containing certain redactions, making public the fact of the hearings and much of their content.  The circumstances here are analogous to the many instances in which records are redacted or sealed to protect a variety of different interests.  The government does not understand 28 C.F.R. § 50.9(f) to require indefinite, bimonthly review of every redaction in every transcript of a closed hearing—the analogy to what the movant seeks here.

The government, however, understands the movant's interest in the parties' reassessing whether the redactions are necessary.  To that end, the government does not oppose holding this motion in abeyance for a fixed period of time, at which point the government would file a status report notifying the Court whether any material changes in circumstances have occurred.  The government respectfully suggests that October 15, 2019, would be appropriate.  But the government respectfully requests that the Court not impose a further and ongoing reporting requirement.

## CONCLUSION

For the foregoing reasons, the motion should be denied or, in the alternative, held in abeyance until October 15, 2019.

Respectfully submitted,

JESSIE K. LIU
U.S. Attorney for the District of Columbia

By: _/s/_____
Jonathan Kravis
Assistant United States Attorneys
555 4th Street NW
Washington, D.C. 20530

Dated: April 15, 2019