UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

-------------------------------------------------- x
                                         :

                                         :       Misc. Action No. 19-00032 (ABJ)

IN THE MATTER OF THE APPLICATION OF  :
WP COMPANY LLC d/b/a THE            :
WASHINGTON POST FOR ACCESS TO     :       ORAL HEARING REQUESTED
CERTAIN SEALED COURT RECORDS       :

                                           :

                                         :
-------------------------------------------------- x

## REPLY MEMORANDUM IN FURTHER SUPPORT OF
## MOTION FOR PUBLIC ACCESS TO CERTAIN SEALED COURT RECORDS

Laura R. Handman (DC Bar No. 444386)
Eric J. Feder (DC Bar No. 1048522;
Admission in this Court pending)

DAVIS WRIGHT TREMAINE LLP
1919 Pennsylvania Avenue NW, Suite 800
Washington, D.C. 20006
Tel: (202) 973-4200
Fax:  (202) 973-4499
Email:  laurahandman@dwt.com
Email:  ericfeder@dwt.com

*Attorneys for Petitioner WP Company d/b/a*
*The Washington Post*

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................................ ii

PRELIMINARY STATEMENT ...................................................................................... 1

ARGUMENT ................................................................................................................... 4

      I.      THE GOVERNMENT HAS NOT MET ITS BURDEN TO JUSTIFY
             KEEPING THE COURT DOCUMENTS UNDER SEAL .................................... 4

             A.      Because the Court Documents Are Subject to the First Amendment
                     Right of Access, Sealing May Only Be Ordered Based on Specific
                     Findings That Closure Is Narrowly Tailored to Serve a Compelling
                     Interest ....................................................................................................... 5

             B.      The Public Release of the Same Information Contained in the Court
                     Documents Undermines Any Need for Continued Sealing ....................... 9

      II.     SOME FORM OF PROCESS TO FACILITATE FURTHER UNSEALING
             DOWN THE LINE IS NECESSARY ................................................................ 14

CONCLUSION ................................................................................................................ 16

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*ACLU v. DOJ*,
  655 F.3d 1 (D.C. Cir. 2011) ................................................................................12

*CBS, Inc. v. U.S. Dist. Court*,
  765 F.2d 823 (9th Cir. 1985) ................................................................................7

*Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Justice*,
  746 F.3d 1082 (D.C. Cir. 2014) ......................................................................9, 10

*Cox Broad. Corp. v. Cohn*,
  420 U.S. 469 (1975) ............................................................................................12

*Dhiab v. Obama*,
  70 F. Supp. 3d 486 (D.D.C. 2014), *aff'd sub. nom. Dhiab v. Trump*,
  852 F.3d 1087 (D.C. Cir. 2017) ..........................................................................12

*Doe v. Pub. Citizen*,
  749 F.3d 246 (4th Cir. 2014) ................................................................................8

*Grove Fresh Distribs., Inc. v. Everfresh Juice Co.*,
  24 F.3d 893 (7th Cir. 1994) ................................................................................14

*In re Application of N.Y. Times Co. for Access to Certain Sealed Court Records*,
  585 F. Supp. 2d 83 (D.D.C. 2008) ........................................................................9

*In re Fort Totten Metrorail Cases*,
  960 F. Supp. 2d 2 (D.D.C. 2013) ........................................................................13

*In re Grand Jury Subpoena, Judith Miller*,
  493 F.3d 152 (D.C. Cir. 2007) ............................................................................13

*In re Guantanamo Bay Detainee Litig.*,
  630 F. Supp. 2d 1 (D.D.C. 2009) ........................................................................12

*In re Hearst Newspapers, L.L.C.*,
  641 F.3d 168 (5th Cir. 2011) ................................................................................7

*In re McClatchy Newspapers, Inc.*,
  288 F.3d 369 (9th Cir. 2002) ................................................................................9

*In re North*,
  16 F.3d 1234 (D.C. Cir. 1994) ............................................................................13

*In re Special Proceedings*,
   842 F. Supp. 2d 232 (D.D.C. 2012) ...............................................................2, 8, 9

*In re Washington Post Co.*,
   807 F.2d 383 (4th Cir. 1986) .................................................................................7

*Int'l Soc'y for Krishna Consciousness, Inc. v. Lee*,
   505 U.S. 672 (1992) ..............................................................................................4

*Kimberlin v. Dep't of Justice*,
   139 F.3d 944 (D.C. Cir. 1998) ...........................................................................10

*Lugosch v. Pyramid Co. of Onondaga*,
   435 F.3d 110 (2d Cir. 2006)............................................................................8, 14

*Nation Magazine v. U.S. Customs Serv.*,
   71 F.3d 885 (D.C. Cir. 1995) .............................................................................10

*Oregonian Publ'g Co. v. U.S. Dist. Court*,
   920 F.2d 1462 (9th Cir. 1990) ..........................................................................5, 6

*Parhat v. Gates*,
   532 F.3d 834 (D.C. Cir. 2008) .............................................................................8

*Press-Enter. Co. v. Superior Court*,
   464 U.S. 501 (1984) ..............................................................................................8

*Richmond Newspapers, Inc. v. Virginia*,
   448 U.S. 555 (1980) ..............................................................................................6

*United States v. Alcantara*,
   396 F.3d 189 (2d Cir. 2005)..................................................................................7

*United States v. Camick*,
   796 F.3d 1206 (10th Cir. 2015) .........................................................................15

*United States v. Corbitt*,
   879 F.2d 224 (7th Cir. 1989) ................................................................................7

*United States v. Criden*,
   681 F.2d 919 (3d Cir. 1982)................................................................................12

*United States v. DeJournett*,
   817 F.3d 479 (6th Cir. 2016) ................................................................................8

*United States v. Hubbard*,
   650 F.2d 293 (D.C. Cir. 1980) ...........................................................................13

*United States v. Kravetz*,
   706 F.3d 47 (1st Cir. 2013) ................................................................................8

*United States v. Loughner*,
   769 F. Supp. 2d 1188 (D. Ariz. 2011) ................................................................9

*United States v. Santarelli*,
   729 F.2d 1388 (11th Cir. 1984) ..........................................................................7

*United States v. Simone*,
   14 F.3d 833 (3d Cir. 1994) .................................................................................8

*United States v. Thomas*,
   905 F.3d 276 (3d Cir. 2018) ...............................................................................5

*United States v. Valenti*,
   987 F.2d 708 (11th Cir. 1993) ..........................................................................15

*Washington Post v. Robinson*,
   935 F.2d 282 (D.C. Cir. 1991) ...................................................................... *passim*

## Rules

Rule 6(e) ...............................................................................................................13

## Constitutional Provisions

First Amendment .......................................................................................... *passim*

## Other Authorities

Dan Zak, *The curious journey of Carter Page, the former Trump adviser who
   can't stay out of the spotlight*, WASH. POST (Nov. 16, 2017) .................................10

Manuel Roig-Franzia and Rosalind S. Helderman, *Witness in special counsel
   probe, former Stone associate, collected payments from Infowars through job
   Stone arranged*, WASH. POST (Jan. 24, 2019) ........................................................10

Rosalind S. Helderman and John Wagner, *Donald Trump Jr. was told campaign
   meeting would be with 'Russian government attorney,' according to emails*,
   WASH. POST (July 11, 2017), http://wapo.st/2u4GCZE ...........................................10

Special Counsel Robert S. Mueller,
   III, *Report On The Investigation Into Russian Interference In The 2016
   Presidential Election* (March 2019),
   https://www.justice.gov/storage/report.pdf .......................................................... *passim*

## PRELIMINARY STATEMENT

In its opposition (the "Opposition" or "Opp.") to the Washington Post's[1] motion to unseal

documents filed in this Court in *United States v. Paul J. Manafort, Jr.*, No. 17-cr-0201-01 (ABJ),

the Government asserts two bases for keeping the information sealed: protection of ongoing law

enforcement investigations and the privacy rights of uncharged third parties.  These are the same

reasons the Government cited in its initial motions to file under seal.  But when the Government

filed those initial motions in late 2018 and early 2019, the OSC investigation was actively

ongoing and its final report had not yet been written.  Since then, formerly "uncharged"

individuals have been indicted in connection with the OSC investigations;[2] the Defendant in this

was case sentenced; the OSC investigation formally closed; and a partially redacted version of

the 448-page, two-volume final report of the OSC was released to the public.[3]  Yet the

Government maintains that there has been "[n]o material change of circumstance" that would

require reassessment of the continued need for the sealing of the Court Documents in this case.

Opp. at 1.  That assertion falls apart under the barest scrutiny.

The Court Documents at issue in this case are plainly subject to the First Amendment

right of public access under well settled law.  *See* Point I.  And contrary to the Government's

statements, the Post does not "agree that [the] redactions may remain in place to protect ongoing

investigations and the privacy of uncharged individuals."  Opp. at 7.  The Post has acknowledged

---

[1] Capitalized terms bear the same definitions as in the Post's Memorandum of Points and Authorities in Support of Motion for Public Access to Certain Sealed Court Records (ECF No. 1-1) ("Post Mem.").

[2] Those additional indictments include Roger Stone on January 25, 2019 and Gregory Craig on April 11, 2019.

[3] *See* Special Counsel Robert S. Mueller, III, *Report On The Investigation Into Russian Interference In The 2016 Presidential Election* (March 2019), https://www.justice.gov/storage/report.pdf (the "Mueller Report").

1

that courts have, at times, found similar interests compelling in other public access cases.  But, in order to justify sealing of the information in this case, the Government must present evidence enabling the Court to "articulate specific findings on the record demonstrating that the decision to seal the [documents in this case] is narrowly tailored and essential to preserve a compelling government interest." *Washington Post v. Robinson*, 935 F.2d 282, 289 (D.C. Cir. 1991).  The Government's vague assertion that the OSC "referred a number of matters to other offices" and those matters are "ongoing," Opp. at 8, does not remotely meet this "demanding" standard. *In re Special Proceedings*, 842 F. Supp. 2d 232, 239 (D.D.C. 2012).

In any event, the release of the public version of the Mueller Report makes clear that a large portion (if not all) of the information contained in the Court Documents can no longer be kept under seal.  Indeed, the Mueller Report contains extensive, unredacted discussion of several of the very issues that were redacted from the Court Documents.  That alone undermines any notion that the interest in continuing to withhold the Court Documents from public view is remotely "compelling."  Indeed, as in the seminal *Robinson* case, because disclosure of that information would only "confirm[] to the public what [h]as already been validated by an official source," unsealing the material can "hardly … pose[] any additional threat to [any] ongoing criminal investigation." *Robinson*, 935 F.2d at 292.  Even if some information in the Court Documents can justifiably be kept under seal, the Government's assertion that "[n]o material changes" require releasing *any* of the redacted information rings hollow.  Opp. at 6.

Finally, the Government protests that the procedure the Post proposed for ongoing review of the continued necessity of sealing in this case would be overly burdensome.  But the Post does not suggest that only one single approach could vindicate the important First Amendment rights of access here.  It was the Defendant in this case that raised the question of whether there was

"going to be some sort of process that we can put in place" to "handle the process of unredact[ing] down the road."  Feb. 13 Tr. at 65:4-13.  The Court responded to that inquiry by pointing out that "usually things have to be triggered by a motion or request," and that the press had not yet made any application related to unsealing the records in this case.  *Id.* at 65:13-66:4. The Post is, of course, open to a proposal that the Court deems appropriate under the circumstances that will facilitate access at the earliest feasible date.  But the reality is that the Government is—and likely will be—the only party in a position to know whether circumstances justifying sealing remain in place down the line.  The Government's primary justification for sealing is the apparently "ongoing" nature of certain investigations, but those investigations will presumably come to an end at some point.  And unless the investigations close with a public announcement, the Post (and public) will have no way of knowing whether sealing on that basis is still justified.

The developments in just the week immediately following the filing of the Government's Opposition in this case—in particular, the release of the public version of the Mueller Report that reveals some of the very information redacted from the Court Documents—illustrates how dramatically and quickly the circumstances that may have once justified sealing of information can change.  Because courts have repeatedly reaffirmed the "critical importance of *contemporaneous* access" to court proceedings and documents, *Robinson*, 935 F.2d at 287—only further enhanced in a case of extreme public importance like this one—the Post submits that some form of process that ensures information is not kept secret longer than necessary to fulfill compelling interests is required here.  What that process will ultimately look like may well take into account the burdens that would be imposed on the Government—for example, the Court may consider a less frequent reporting requirement to be appropriate.  The Government proposes

3

holding this motion in abeyance until October 2019, at which time the Government "can notify

the Court … whether any material change in circumstances has occurred." Opp. at 6. Although

holding this motion in abeyance for six months is not appropriate, the Post would not object to

the Court setting a specific date or dates for the parties to submit a status report on the need for

continued redaction. In any case, the First Amendment rights of access in a case of vital public

interest cannot be set aside simply to avoid inconvenience to the Government. As Justice

Kennedy once pointedly explained, "[t]he First Amendment is often inconvenient. But that is

beside the point." *Int'l Soc'y for Krishna Consciousness, Inc. v. Lee*, 505 U.S. 672, 701 (1992)

(Kennedy, J., concurring).

## <u>ARGUMENT</u>

### I. THE GOVERNMENT HAS NOT MET ITS BURDEN TO JUSTIFY KEEPING THE COURT DOCUMENTS UNDER SEAL

The Government suggests that the Court Documents are not subject to the First

Amendment right of public access, but maintains that "it is unnecessary to address th[at] issue,"

because the "redactions [to the Court Documents] were undertaken with great care," and the Post

"has not disputed that the interests invoked in the various sealing motions are compelling." Opp.

at 7. That is not an accurate characterization of the Post's position. The Post has acknowledged

that courts have justified sealing documents based on the justifications asserted by the

Government here. *See* Post Mem. at 10-11. But that does not mean that sealing is justified in

every case in which those interests are invoked. In any event, in order for the Court to determine

what standard applies to the Government's request to maintain the Court Documents under seal,

it is, in fact, necessary to determine whether the First Amendment right of access applies. And

because the First Amendment right of access plainly does apply, the Court must make specific

findings on the record that sealing of specific records is necessary to fulfill a compelling interest.

The Government has not made the requisite showing.  Even if the Government had made that showing on April 15, when it filed its Opposition, the subsequent revelation of much of the sealed information in the Mueller Report requires the Government to revisit the redactions and establish that any sealing is still necessary.

> **A.      Because the Court Documents Are Subject to the First Amendment Right of Access, Sealing May Only Be Ordered Based on Specific Findings That Closure Is Narrowly Tailored to Serve a Compelling Interest**

As an initial matter, the qualified First Amendment right of access plainly does apply to the Court Documents.  The Government tries to characterize the Court Documents narrowly as relating only to "whether a defendant has breached his plea agreement," for which there is not a "historical tradition of public access" because "this kind of adjudication is uncommon and has no strong historic pedigree."  Opp. at 10.  But the Post acknowledged up front that "there is not a longstanding tradition of public access to this fairly *sui generis* category of documents."  Post Mem. at 6.  There is, on the other hand, a very well established tradition of public access not only to plea agreements but also to "*related documents*."  *Robinson*, 935 F.2d at 287 (emphasis added).  *See also United States v. Thomas*, 905 F.3d 276, 282 (3d Cir. 2018) ("We … hold, in accord with our sister circuits that have reached this issue, that the First Amendment right of access applies to plea hearings and, by extension, to documents related to those hearings.") (collecting cases); *Oregonian Publ'g Co. v. U.S. Dist. Court*, 920 F.2d 1462, 1465–66 (9th Cir. 1990) ("The existence of a qualified right of access to plea agreements and related documents has been recognized by other circuits.") (collecting cases).  Documents filed in court relating to whether a defendant breached a plea agreement are, by any reasonable understanding, documents "related" to plea agreements and plea proceedings.

The Government argues that a presumptive right of access to court filings related to breaches of plea agreements would "put the government in untenable situations," because "the

government could find itself forced to choose between protecting important government and

public equities, and zealously enforcing the terms of its plea agreement." Opp. at 11. But this

proves too much. The exact same concerns would apply to the decision to bring criminal

charges against a defendant in the first place. A criminal trial frequently exposes to public

scrutiny highly private information, as well as details about the inner workings of government

investigations. But the right of public access has nevertheless been recognized by the Supreme

Court as "an indispensible attribute of an Anglo-American trial." *Richmond Newspapers, Inc. v.*

*Virginia*, 448 U.S. 555, 569 (1980); *see id.* at 573 ("[A] presumption of openness inheres in the

very nature of a criminal trial under our system of justice."). As the Ninth Circuit explained,

"[j]ust as there exists a first amendment right of access in the context of criminal trials, it should

exist in the context of the means by which most criminal prosecutions are resolved, the plea

agreement." *Oregonian*, 920 F.2d at 1465 (internal citation omitted).[4]

     In any event, as the Court made clear, the Court Documents ultimately were considered

by the Court in connection with its sentencing determination, and the hearings concerning those

submissions therefore functioned as an extension of the sentencing proceedings. Breach Order at

3.[5] The Government half-heartedly suggests that "[i]t is unclear whether a First Amendment

right of access applies to the sentencing submissions at issue here." Opp. at 11 n.4. But all the

Government cites to show this lack of clarity is a decision declining to find a First Amendment

---

[4] Of course, the fact that the *qualified* First Amendment right of access applies to the type of
documents at issue here does not mean that the Government is faced with the Hobson's choice
suggested in the Opposition. If sealing documents related to an alleged breach of a plea
agreement was, in fact, necessary to serve a compelling interest, the documents could be sealed.

[5] The Government implicitly acknowledged this in its formal sentencing memorandum, when it
acknowledged the relevance of the Defendant's conduct in breaching the plea agreement but
declined to "repeat the evidence" in that submission, because the Court was, by that point,
already "fully familiar with this proof." Government's Sentencing Memorandum (ECF No. 525)
at 23.

right to access the confidential presentence report from the court's probation department. *See id.* (citing *United States v. Corbitt*, 879 F.2d 224, 237 (7th Cir. 1989)). In fact, courts have consistently drawn a sharp distinction between the probation office's presentence report and the "various documents filed [by the parties] in connection with sentencing proceedings." *United States v. Alcantara*, 396 F.3d 189, 197 & n.6 (2d Cir. 2005) (holding that public had right to access sentencing filings by the parties, but acknowledging that "[c]ourts have generally held … that there is no First Amendment right of access to pre-sentence reports") (citing *Corbitt*, 879 F.2d at 237).[6] Documents the parties submit in connection with sentencing—such as the Court Documents here—are subject to a well-established right of access under the First Amendment, and the Government cites no authority to the contrary. *See* Post Mem. at 6-8; *see also In re Hearst Newspapers, L.L.C.*, 641 F.3d 168, 176 (5th Cir. 2011) ("[C]ourts of appeals have also recognized a First Amendment right of access to documents filed for use in sentencing proceedings.") (collecting cases); *In re Washington Post Co.*, 807 F.2d 383, 390 (4th Cir. 1986) ("[T]he First Amendment right of access applies to documents filed in connection with … sentencing hearings in criminal cases, as well as to the hearings themselves."); *United States v. Santarelli*, 729 F.2d 1388, 1390 (11th Cir. 1984) ("[T]he public has a First Amendment right to see and hear that which is admitted in evidence in a public sentencing hearing.").

Because the public has a presumptive right of access to the Court Documents under the First Amendment, "the Government must give the court a basis for withholding [them] from

---

[6] In fact, in *Corbitt* itself, the parties conceded that the letters submitted by the parties (and others) in connection with the sentencing proceedings could not be sealed; the appeal concerned only whether the presentence report could be disclosed. 879 F.2d at 227 n.1. *See also CBS, Inc. v. U.S. Dist. Court*, 765 F.2d 823, 826 (9th Cir. 1985) ("[N]othing in the [Federal] Rule's language, history, or judicial interpretation suggests that documents filed in support of motions for reduction of sentence should be treated in the same manner as presentence reports.").

public view," because "[i]t is the court, not the Government, that has discretion to seal a judicial record, which the public ordinarily has the right to inspect and copy." *Parhat v. Gates*, 532 F.3d 834, 851, 853 (D.C. Cir. 2008) (citations omitted) (ruling on Government's efforts to designate certain non-classified material as "protected" and subject to sealing in context of Guantanamo Bay prisoner proceedings).  The Government's evidence must be sufficient to enable the Court to articulate "findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest [and] specific enough that a reviewing court can determine whether the closure order was properly entered." *Press-Enter. Co. v. Superior Court* ("*Press-Enterprise I*"), 464 U.S. 501, 510 (1984).  *See Robinson*, 935 F.2d at 289; *In re Special Proceedings*, 842 F. Supp. 2d at 239.  "[S]pare, generic assertions of the need to protect information" are not sufficient. *Parhat*, 532 F.3d at 853.  And indeed, Courts of Appeals have not hesitated to reverse decisions to keep documents under seal when the district court does not make the requisite findings of a compelling need and narrow tailoring specific to that particular case.[7]

Here, the Government's broad assertions that the Special Counsel "has also referred a number of matters to other offices," Opp. at 2, is not sufficient to enable the Court to make specific findings that maintaining the Court Documents under seal is narrowly tailored to serve a compelling interest.  This is particularly so given the degree to which circumstances have changed since the Court Documents were first filed.  On that basis alone, the Court should order the Court Documents unsealed.

---

[7] *See, e.g.*, *United States v. DeJournett*, 817 F.3d 479, 485 (6th Cir. 2016); *Doe v. Pub. Citizen*, 749 F.3d 246, 270 (4th Cir. 2014); *United States v. Kravetz*, 706 F.3d 47, 60–61 (1st Cir. 2013); *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 126 (2d Cir. 2006); *United States v. Simone*, 14 F.3d 833, 840–42 (3d Cir. 1994).

**B.      The Public Release of the Same Information Contained in the Court Documents Undermines Any Need for Continued Sealing**

The Government incorrectly asserts that the Post "does not dispute that redaction of [the] information [in the Court Documents] is appropriate." Opp. at 1.  As a general matter, the fact that courts have found protection of ongoing law enforcement investigations to be a compelling interest to justify sealing in other cases does not relieve the Government of its burden to justify sealing in *this* case.  In addition, although some courts have recognized privacy interests of uncharged individuals as grounds to justify sealing, *see* Opp. at 7, other courts have held that "privacy and reputational concerns typically don't provide sufficient reason to overcome a qualified First Amendment right of access."  *United States v. Loughner*, 769 F. Supp. 2d 1188, 1196 (D. Ariz. 2011) (citing *In re Application of N.Y. Times Co. for Access to Certain Sealed Court Records*, 585 F. Supp. 2d 83, 93 n.14 (D.D.C. 2008) (citing *In re McClatchy Newspapers, Inc.*, 288 F.3d 369, 374 (9th Cir. 2002) (stating in a common law right of access case that "injury to official reputation is an insufficient reason for repressing speech that would otherwise be free"))); *see also In re Special Proceedings*, 842 F. Supp. 2d at 245 (holding that prosecutors' "privacy and reputational interests" did not constitute a "compelling interest that would meet their high burden to justify keeping the Report [of an investigation into possible prosecutorial misconduct] under seal" under First Amendment).

Indeed, in an already high profile case like this one, where the uncharged individuals likely include prominent members of the U.S. President's campaign and administration, a blanket assertion of "privacy rights of uncharged third parties" requires closer scrutiny. Certainly, this case is a far cry from a situation where heretofore unknown third parties will suddenly be subject to "the stigma of having [their] name[s] associated with a criminal investigation." *Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Justice*, 746

F.3d 1082, 1091 (D.C. Cir. 2014).  Moreover, many of the (as-yet uncharged) targets of the OSC

investigation have spoken out themselves about their involvement, which may further undermine

any potential privacy interests that could justify sealing.[8]  *See, e.g.*, *id.* at 1092 (holding in FOIA

context that a politician's "obvious privacy interest in keeping secret the fact that he was the

subject of an FBI investigation was diminished by his well-publicized announcement of that very

fact") (citing, *inter alia*, *Kimberlin v. Dep't of Justice*, 139 F.3d 944, 949 (D.C. Cir. 1998)

(prosecutor's public acknowledgment that he was subject of disciplinary proceedings

"undoubtedly does diminish his interest in privacy: the public already knows who he is, what he

was accused of, and that he received a relatively mild sanction"); *Nation Magazine v. U.S.

Customs Serv.*, 71 F.3d 885, 896 (D.C. Cir. 1995) (politician waived right to have his name

redacted from responsive documents regarding events he publicly discussed)).

In any event, to whatever extent those interests could have justified sealing in this case at

some point along the way, the Government is simply not credible when it asserts that "[n]o

material changes have occurred in these past few months" that would merit re-evaluation of the

need for continued sealing of the Court Documents.  Opp. at 8.  That contention was

questionable when the Government filed its Opposition on April 15, given that, by that point,

---

[8] *See, e.g.*, Rosalind S. Helderman and John Wagner, *Donald Trump Jr. was told campaign meeting would be with 'Russian government attorney,' according to emails*, WASH. POST (July 11, 2017), http://wapo.st/2u4GCZE (discussing Donald Trump, Jr.'s publication on his own Twitter account of his emails regarding a meeting with a Russian lawyer at Trump Tower after the New York Times first reported the meeting); Dan Zak, *The curious journey of Carter Page, the former Trump adviser who can't stay out of the spotlight*, WASH. POST (Nov. 16, 2017), http://wapo.st/2zIfySp (discussing Trump adviser Carter Page's extensive appearances on news television shows while he was under investigation by the OSC); Manuel Roig-Franzia and Rosalind S. Helderman, *Witness in special counsel probe, former Stone associate, collected payments from Infowars through job Stone arranged*, WASH. POST (Jan. 24, 2019), https://wapo.st/2FOU760 (discussing publication of book by investigation witness Jerome F. Corsi about his experience being interviewed by the OSC entitled "Silent No More: How I Became a Political Prisoner of Mueller's 'Witch Hunt'").

additional (formerly "uncharged") individuals had been indicted, the Defendant in this case had

been sentenced, the OSC investigation had closed, and the Mueller Report had been delivered to

the Attorney General.  However, with the release of the public version of the Mueller Report, it

is overwhelmingly clear that at least some—if not all—of the information in the Court

Documents can no longer remain under seal.

For example, the public was already aware that among the issues that were redacted from

the Court Documents was the allegation that the Defendant had a series of meetings with

Konstantin Kilimnik (including one in Madrid in February 2017) during which he discussed a

"peace plan" to resolve tensions between Russia and Ukraine and shared Trump campaign

polling data.  *See* Post Mem. at 13-14 and n.3-4 (explaining that redaction errors in a filing by

the Defendant inadvertently revealed some of the sealed information).  And indeed, references to

the Ukraine peace plan, campaign polling data, and the Madrid meeting do not appear at all in

the redacted versions of the Court Documents.  However, those issues are all discussed explicitly

in the Mueller Report.  *See* Mueller Report, Vol. I at 130 ("Manafort communicated with

Kilimnik about peace plans for Ukraine on at least four occasions after their first discussion of

the topic on August 2…") & 6, 10, 140-44 (further discussion of Ukraine peace plan); *id.* at 7

("Manafort had caused internal polling data to be shared with Kilimnik, and the sharing

continued for some period of time after their August meeting.") & 10, 129-31, 135-36 (further

discussion of polling data allegations); and *id.* at 141-43 (discussion of February 2017 meeting

with Kilimnik in Madrid).

In fact, the Mueller Report cites directly to the Feb. 13 Hearing transcript in explaining

that "[i]n resolving whether Manafort breached his cooperation plea agreement by lying to the

Office, th[is] district court found that Manafort lied about, among other things, his contacts with

Kilimnik regarding the pleace plan, including the meeting in Madrid." *Id.* at 143 n.958.  But

with the redactions as they currently stand, the Feb. 13 Hearing transcript states only that the

Defendant "was also asked about a February 2017 meeting ████ regarding ██████

…." Feb. 13 Tr. at 29.

Courts in this Circuit have explained that "when the sealed facts are already public,

maintaining documents under seal is only appropriate when, despite what the public already

knows, the documents' release would *still* give rise to a substantial probability of harm." *Dhiab*

*v. Obama*, 70 F. Supp. 3d 486, 496 (D.D.C. 2014) (citing *Robinson*, 935 F.2d at 291-92), *rev'd*

*on other grounds sub nom.*, *Dhiab v. Trump*, 852 F.3d 1087 (D.C. Cir. 2017).  *See also In re*

*Guantanamo Bay Detainee Litig.*, 630 F. Supp. 2d 1, 6–7 (D.D.C. 2009) (explaining that "the

specificity required by the D.C. Circuit precludes the government from seeking to designate as

protected information that [which] is already in the public domain").  If the information about the

"ongoing matters" has been revealed publicly in the Mueller Report, there is no compelling

interest in keeping substantially the same information sealed here.  Likewise, an interest in

protecting the "privacy of uncharged individuals" may not justify sealing if those individuals'

involvement in the investigation is already a matter of public record.  *See Cox Broad. Corp. v.*

*Cohn*, 420 U.S. 469, 494–95 (1975) ("[T]he interests in privacy fade when the information

involved already appears on the public record."); *ACLU v. DOJ*, 655 F.3d 1, 9 (D.C. Cir. 2011)

(holding, in FOIA context, that "[t]he fact that information about these proceedings is readily

available to the public reduces further still the incursion on privacy resulting from disclosure");

*United States v. Criden*, 681 F.2d 919, 922 (3d Cir. 1982) (holding that "mere embarrassment" of

third parties was not enough to rebut strong presumption of access to court documents,

"particularly because the [documents] are already public information").[9]  To the extent third parties whose names and involvement have been redacted from the Court Documents are discussed openly in the Mueller Report, that information can no longer remain under seal in this case.

The Post acknowledges that portions of the Mueller Report itself are redacted, both to avoid "harm to ongoing matters" and to protect "privacy rights."  And it may be that the Government can ultimately justify continued sealing of *some* of the material from the Court Documents on those same grounds.[10]  But the vague assertions in the Government's Opposition are not remotely sufficient to meet the demanding standard under the First Amendment.  And, at a minimum, a substantial portion of the sealed information must be unredacted in light of the apparent disclosure of that very information in the Mueller Report.

---

[9] Even under the less rigorous standard for the common law right of access to court documents, the D.C. Circuit holds that "previous access [to information] has been considered relevant to a determination whether more liberal access should be granted to materials formerly properly accessible on a limited basis through legitimate public channels and to a determination whether further dissemination of already accessible materials can be restrained."  *United States v. Hubbard*, 650 F.2d 293, 318–19 (D.C. Cir. 1980); *see also In re Fort Totten Metrorail Cases*, 960 F. Supp. 2d 2, 13 (D.D.C. 2013) (holding that "[t]he fact that th[e] information [sought] is freely available in the public domain weighs heavily in favor of disclosure … and negates the defendants' asserted privacy interests").

[10] Some of the material redacted from the Mueller Report is also designated "Grand Jury."  The Government has not asserted that as a ground for sealing in this case.  Either way, just as the public disclosure of information undermines the "ongoing investigation" and "privacy" justifications for sealing documents, the D.C. Circuit has repeatedly held that "when once-secret grand jury material becomes 'sufficiently widely known,' it may 'los[e] its character as Rule 6(e) material.'"  *In re Grand Jury Subpoena, Judith Miller*, 493 F.3d 152, 154 (D.C. Cir. 2007) (quoting *In re North*, 16 F.3d 1234, 1245 (D.C. Cir. 1994)).  *See also* Post Mem. at 12-13.  Thus, if any ostensibly grand jury material in the Court Documents has been otherwise revealed, that could not serve as a basis for sealing.

## II.      SOME FORM OF PROCESS TO FACILITATE FURTHER UNSEALING DOWN THE LINE IS NECESSARY

The Government objects to the establishment of a "process" for ongoing reevaluation of the redactions in this case, arguing that it would "impose a significant and indefinite burden on the government," given that "[i]t is unknown how long" the investigations that purportedly necessitate the redactions "may remain ongoing."  Opp. at 12-13.  The Government also faults the Post for not citing any "authority for imposing this sort of ongoing process."  *Id.* at 12.  These arguments miss the mark.

The Post proposed the implementation of a "process" based on the Defendant raising that very issue at the Feb. 13 Hearing, and the Court seeming to invite such a proposal.  *See* Feb. 13 Tr. at 65:4-66:4.  The Court responded to that inquiry by pointing out that "usually things have to be triggered by a motion or request," and that the press had not yet made any application related to unsealing the records in this case.  *Id.* at 65:13-66:4.  The "authority" for making such a proposal is the First Amendment right of access to judicial proceedings, and the widely recognized principle that, "once found to be appropriate, access should be immediate and contemporaneous."  *Grove Fresh Distribs., Inc. v. Everfresh Juice Co.*, 24 F.3d 893, 897 (7th Cir. 1994); *see Robinson*, 935 F.2d at 287 (acknowledging "the critical importance of *contemporaneous* access" to the fulfillment of "the public's role as overseer of the criminal justice process"); *see also Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 126–27 (2d Cir. 2006) (collecting cases).  Indeed, it is the Government that does not—and cannot—cite any "authority" for the proposition that court documents of profound interest to the public and to which the First Amendment right of access applies can be kept under seal permanently, even once the ostensible basis for sealing the documents expires.

14

The need for some form of process to facilitate subsequent review of the appropriateness of sealing in this case is animated by two practical realities:  First, the profound public interest in understanding these proceedings as fully as possible is undeniable.  To the extent imposing an administrative burden may not be justifiable in every case, it surely is here.  Second, the Government is the only party in a position to know whether the asserted bases for sealing remain in place, because only the Government will know when the "ongoing" investigations that relate to the redactions end.

As the proponent of sealing presumptively public court documents, the Government bears the "burden of demonstrating a compelling interest to justify sealing."  *Robinson*, 935 F.2d at 283.  Meeting that burden of proof on a going-forward basis may well entail some administrative burden.  The Post is open to conferring on an appropriate approach to resolve these concerns.  But the fact that properly vindicating the public's First Amendment right to access these Court Documents may impose some burden on the Government is not a reason to allow the Court Documents to remain indefinitely sealed without justification.  *Cf. United States v. Camick*, 796 F.3d 1206, 1213 n.5 (10th Cir. 2015) (rejecting Government's request that supplemental record in case be sealed in its entirety "because review or redaction would be unduly burdensome and costly," because this argument "overlooks" the presumption of access to judicial records); *United States v. Valenti*, 987 F.2d 708, 715 (11th Cir. 1993) (rejecting government's argument that court must "avoid binding the district court to any formal procedure [for docketing court filings] that is unduly burdensome," because the docketing procedure then in place "is inconsistent with affording the various interests of the public and the press meaningful access to criminal proceedings").

In any event, even taking the Government's arguments on their own terms, they are not persuasive. This Motion pertains to redactions from less than a dozen documents filed in a single case. The Mueller Report identifies eleven cases transferred to other components within the Department of Justice and fourteen investigations that were referred to other agencies (only two of which are disclosed by name in the report). *See* Mueller Report Appendix D. Presumably, only a subset of those ongoing matters relate to any of the redactions in the Court Documents. Given the public interest in disclosure here, it is not unduly burdensome to require the Government to, at least, update the Court about the investigations within this discrete subset. Now that the OSC investigation is complete, some form of periodic reporting requirement is the most straightforward way to ensure that the Government keeps the Court apprised of whether circumstances have changed. The Government suggests holding the motion in abeyance for six months until October 2019 and reporting back at that time. Given that at least some of the information must be unsealed now, holding the motion in abeyance would not be appropriate. But the Post would not object to the Court setting a fixed deadline in some number of weeks for the Government to report on the status of the investigations, and, based on that report, setting additional deadlines for continued updates.

## CONCLUSION

Given that a substantial portion of the information contained in the Court Documents has been revealed publicly, that information must now be unsealed, and the Government should be required to properly reassess whether continued sealing of the Court Documents is necessary,

both now and in the future, as events continue to develop so that the Court can make the requisite

specific findings.  The Post's Motion should be granted.

Dated:   Washington, D.C.
        April 26, 2019

                                          Respectfully submitted,

                                          DAVIS WRIGHT TREMAINE LLP

                                          By:  /s/Laura R. Handman

                                          Laura R. Handman (DC Bar No. 444386)
                                          Eric J. Feder (DC Bar No. 1048522;
                                          Admission to this Court Pending)

                                          1919 Pennsylvania Avenue NW, Suite 800
                                          Washington, D.C. 20006
                                          Tel: (202) 973-4200
                                          Fax:  (202) 973-4499
                                          Email:  laurahandman@dwt.com
                                          Email:  ericfeder@dwt.com

                                          *Attorneys for Petitioner WP Company d/b/a The
                                          Washington Post*